# DAVID W. FLORIAN, SR. *v.* FRANK LENGE
## (AC 25064)

Lavery, C. J., and Schaller and Gruendel, Js.

Argued April 28—officially released September 13, 2005

*Thomas J. Mullins*, with whom, on the brief, was *Frank Lenge*, pro se, for the appellant (defendant).

*Bridget C. Gallagher*, with whom, on the brief, was *Andrew J. Denorfia*, for the appellee (plaintiff).

*Opinion*

LAVERY, C. J. The pro se defendant, Frank Lenge, appeals from the judgment of the trial court rendered in favor of the plaintiff, David W. Florian, Sr., in this

action on a promissory note. The defendant claims that the court improperly (1) applied the law governing promissory notes under the Uniform Commercial Code rather than contract law, (2) held that the defense of laches was unavailable to him, (3) awarded attorney's fees and (4) restricted cross-examination at trial.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the issues on appeal. On July 17, 1991, the defendant executed a promissory note in favor of the plaintiff, in the original principal amount of $15,000. The promissory note provided that the defendant was to pay to the plaintiff, or his order, the sum of $15,000 with interest and costs of collection, including attorney's fees, incurred in any action brought to collect sums due on the note. The defendant was to pay the plaintiff in specified monthly sums until the outstanding balance of the principal was paid in full on September 1, 1998. If the defendant were to default on any monthly payment, for a period of fifteen days after the payment was due, the entire balance of the note could become immediately due and payable at the option of the holder.

The defendant made two payments on the note, with the last payment on September 1, 1992, and thereafter

---

[1] In his brief, it appears that the defendant also asks this court to review the denial of his motion for summary judgment. Generally, the denial of a motion for summary judgment is not reviewable after a full trial. "Our courts have held that the denial of a motion for summary judgment is generally not appealable where a full trial on the merits produces a verdict against the moving party. . . . The rationale for the rule . . . is that a decision based on more evidence should preclude review of a decision based on less evidence." (Citations omitted.) *Heritage Village Master Assn., Inc.* v. *Heritage Village Water Co.*, 30 Conn. App. 693, 697, 622 A.2d 578 (1993); see also *Bank of America, FSB* v. *Hanlon*, 65 Conn. App. 577, 578 n.2, 783 A.2d 88 (2001). We therefore decline to review the denial of the motion for summary judgment. To the extent that the defendant, through his claim, is contesting the appropriate statute of limitations, we address that issue in part I.

was in default on the note. The plaintiff did not exercise his option to accelerate the note. On September 1, 1998, the note matured without further payment by the defendant, leaving an outstanding principal balance of $14,753.46 due. On January 11, 2002, the plaintiff brought this action to recover the amount due under the promissory note. In response to the complaint, the defendant denied the claims and raised ten special defenses and a five count counterclaim. Among the special defenses he raised were that the action was barred by the statute of limitations and laches. Subsequently, the defendant filed a motion for summary judgment on those grounds. The defendant argued that the plaintiff's action was barred by the six year statute of limitations pursuant to General Statutes § 52-576 (a)[2] because the cause of action arose on September 1, 1992, the date on which payments on the note ceased, causing a breach of contract. The defendant also argued that the doctrine of laches barred the claim because the plaintiff's delay in bringing the action was unreasonable and resulted in prejudice.

The court issued a memorandum of decision on November 5, 2003, denying the defendant's motion for summary judgment. The court concluded that the note was a negotiable instrument under General Statutes § 42a-3-104,[3] which is part of our Uniform Commercial

---

[2] General Statutes § 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ."

[3] General Statutes § 42a-3-104 (a) provides in relevant part: " '[N]egotiable instrument' means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it: (1) [i]s payable to bearer or to order at the time it is issued or first comes into possession of a holder; (2) [i]s payable on demand or at a definite time; and (3) [d]oes not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money . . . ."

Code. The court, therefore, determined that the applicable statute of limitations was the six year statute of limitations provided in General Statutes § 42a-3-118[4] for negotiable instruments and not § 52-576 (a), which is applicable to simple contracts. Consequently, under § 42a-3-118, the action was timely because it was commenced within six years of the maturity date of the note, September 1, 1998. In a footnote, the court noted that even if it were to apply the six year contract statute of limitations contained in § 52-576 (a), the result would be the same because September 1, 1998, the date the last payment was due, was the date on which the cause of action accrued. Last, the court determined that because the plaintiff's action was an action at law seeking damages as relief, the equitable doctrine of laches was not applicable.

Following denial of the defendant's summary judgment motion and after a full court trial, the court rendered judgment in favor of the plaintiff on January 6, 2004. Judgment totaled $35,282.61, an amount comprised of the outstanding principal balance due of $14,753.46, together with interest of $16,908.41, costs of $230.74 and attorney's fees in the sum of $3390. The court rejected the defendant's statute of limitations and laches defenses.[5]

I

The defendant first claims that the court improperly applied the law governing promissory notes under the

[4] General Statutes § 42a-3-118 (a) provides: "Except as provided in subsection (e), an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."

[5] In denying the motion for summary judgment, the court ruled that the claim was improper in an action at law. At trial, the court denied the defendant's laches claim on its merits.

Uniform Commercial Code rather than applying contract law. According to the defendant, as a consequence of that misapplication, the court mistakenly (1) did not find that the plaintiff failed to plead the applicable statute, (2) allowed the plaintiff to first bring his claim as a breach of contract action, then allowed him to recover under the statute governing promissory notes, (3) failed to find that the note at issue did not meet the definition of a negotiable instrument under § 42a-3-104, (4) failed to find that the plaintiff was not a holder in due course and (5) found that the action was not barred because the date the statute of limitations began to accrue was the date the note matured on September 1, 1998, and not the date the initial breach occurred on September 1, 1992. We disagree with each of those arguments and conclude that the court properly applied § 42a-3-104.

A

The defendant argues first that the plaintiff failed to plead § 42a-3-104 in his complaint as required by Practice Book § 10-3 and, therefore, should not have been permitted to recover under that statute.[6] Section 10-3 (a) provides: "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number." We cannot agree with the defendant.

First, we note the standard of review. "[T]he interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's construction of the pleadings is plenary." (Citations omitted; internal quotation marks omitted.) *Federal Deposit Ins.*

---

[6] We note that although the defendant contends that the plaintiff failed to comply with Practice Book § 10-3 by not pleading the statute, the defendant himself failed to plead the particular statute of limitations he claimed as one of his special defenses.

*Corp.* v. *Owen,* 88 Conn. App. 806, 813, 873 A.2d 1003 (2005); see also *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.,* 85 Conn. App. 663, 671, 858 A.2d 860 (2004) (interpretation of requirements of rules of practice is question of law), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

Our general practice in this state is to require fact pleading only. *Amore* v. *Frankel,* 228 Conn. 358, 370 n.2, 636 A.2d 786 (1994). Practice Book § 10-1 requires only that each pleading "contain a plain and concise statement of the material facts on which the pleader relies, but not of the evidence by which they are to be proved . . . ." In addition, we have held that Practice Book § 10-3 "is directory rather than mandatory, and its primary purpose is to ensure that a defendant is sufficiently apprised of the applicable statute during the proceedings." *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.,* supra, 85 Conn. App. 671. Finally, in *Krevis* v. *Bridgeport,* 80 Conn. App. 432, 435–36, 835 A.2d 123 (2003), cert. denied, 267 Conn. 914, 841 A.2d 219 (2004), we held that when a party mentions a statute, or the concepts embodied therein, several times prior to trial, the opposing party was sufficiently apprised that the statute's applicability was claimed.

Here, after a careful review of the record, we conclude that the plaintiff's complaint adequately defined the issue in dispute and that the defendant was sufficiently apprised of the claimed applicability of the statute. In regard to the complaint, the plaintiff plainly and concisely stated the material facts surrounding the cause of action by alleging nonpayment of the matured promissory note by the defendant. Cf. *Criscuolo* v. *Mauro Motors, Inc.,* 58 Conn. App. 537, 546–47, 754 A.2d 810 (2000) (plaintiff sufficiently pleaded facts underlying breach of warranty claim although she did

not cite General Statutes § 42a-2-314 [2] [c]). The plaintiff was not required to define promissory notes, nor was he required to establish that the promissory note at issue satisfied the conditions of negotiable instruments under the Uniform Commercial Code. Moreover, the record shows that the defendant was sufficiently apprised of the statute on which the plaintiff relied. In the plaintiff's objection to the defendant's motion for summary judgment, he specifically referenced § 42a-3-104 and noted the Uniform Commercial Code's applicability to his claim.[7] Subsequently, the defendant, in his reply memorandum in response to the plaintiff's objection, also addressed the applicability of § 42a-3-104 and the Uniform Commercial Code. We conclude, therefore, that the defendant was sufficiently apprised of the plaintiff's reliance on § 42a-3-104.

B

The defendant next argues that the plaintiff initially brought his claim as a breach of contract action but thereafter was permitted to prevail under the statute governing promissory notes. We disagree.

A review of the complaint demonstrates that contrary to the defendant's assertion, the plaintiff did not claim

[7] The plaintiff's objection to the defendant's motion for summary judgment states specifically: "The Defendant argues that the Plaintiff['s] claim is barred by the statute of limitations, citing Connecticut General Statute[s] Section 52-576 (a) which provides a six year limitation on bringing a claim for a breach of contract. However, the Plaintiff's cause of action does not lie in breach of contract but is an action to collect on a promissory note and is therefore a negotiable instrument under Connecticut General Statutes Section 42a-3-104 and is governed by the Uniform Commercial Code ('UCC'). Under Section 42a-3-118 of the UCC the Plaintiff must bring suit within six years from the maturity date. The maturity date is stated on the face of the Note and was September 1, 1998. The Plaintiff's complaint, dated January 11, 2002, was served January 16, 2002, approximately three and one-half years from the maturity date." The plaintiff's theory of the case was, therefore, abundantly clear.

breach of contract.[8] As was required, he merely alleged the material facts surrounding the cause of action. Because the defendant's argument rests on a factually inaccurate premise, we conclude that no further analysis is warranted.

C

The defendant next claims that the court should have applied the law of contracts because the promissory note at issue is not a negotiable instrument. Specifically, the defendant argues that because the promissory note at issue is not a negotiable instrument under § 42a-3-104, the statute of limitations governing the claim is that for simple or implied contracts, § 52-576, which requires that an action be filed "within six years after the right of action accrues," and not § 42a-3-118, which specifically governs promissory notes and provides that an action to enforce a note payable at a definite time must be commenced "within six years after the due date or dates stated in the note . . . ." We do not agree.

The defendant's claim raises the question of whether the note at issue meets the definition of a negotiable instrument stated in § 42a-3-104. "Because the interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law, our review is plenary." *Juchniewicz* v. *Bridgeport Hospital*, 86 Conn. App. 310, 314, 860 A.2d 1275 (2004), cert. granted on other grounds, 272 Conn. 917, 866 A.2d 1287 (2005).

---

[8] The allegations of the plaintiff's complaint, in their entirety, are as follows: "(1) By Promissory Note dated July 17, 1991 (the 'Note'), the Defendant, Frank Lenge, promised to pay to the order of David W. Florian, Sr. the principal sum of Fifteen Thousand Dollars ($15,000.00), with interest thereon and other charges as provided therein. A copy of the Note is attached hereto as Exhibit A. (2) In the Note, the Defendant, Frank Lenge, further agreed to pay all costs of collection and reasonable attorney's fees incurred by the holder in connection therewith. (3) Despite due demand and despite the maturity thereof, the Defendant, Frank Lenge, has failed, neglected and/or refused to pay the amounts due under the Note."

Section 42a-3-104 provides that any writing may be a negotiable instrument if it (1) is payable to order or to bearer, (2) is payable on demand or at a definite time and (3) contains an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges, and no other promise, order, obligation or power is given by the maker or drawer except as otherwise authorized. See *Lenares* v. *Miano*, 74 Conn. App. 324, 328 n.4, 811 A.2d 738 (2002). In the present case, the note is clearly made payable "to David W. Florian, Sr., or order," for the fixed amount of $15,000, and outlines a schedule for payments to be made at definite times, or on demand in the event of default, at the option of the holder of the note. No further conditions for payment are included. We conclude that the note in this case was a negotiable instrument because it (1) was made payable to the plaintiff, or his order, (2) was made payable at definite times following an installment schedule, with a final payment date of September 1, 1998, and (3) contained an unconditional promise to pay a fixed amount of money, all of which were within the plain meaning of § 42a-3-104. The statute of limitations under § 42a-3-118 governing negotiable instruments, therefore, applies.

The defendant cites *New Haven Savings Bank* v. *LaPlace*, 66 Conn. App. 1, 13, 783 A.2d 1174, cert. denied, 258 Conn. 942, 786 A.2d 426 (2001), to support his argument that the promissory note should be viewed as a contract and not as a negotiable instrument. That case, however, is distinguishable because it applied contract law principles only to construe the terms of a promissory note. See id. It was in that context that this court explained that "[a] promissory note is nothing more than a written contract for the payment of money, and, as such, contract law applies. . . . In construing a contract, the controlling factor is normally the intent expressed in the contract, not the intent which the

parties may have had or which the court believes they ought to have had." (Internal quotation marks omitted.) Id. We conclude that the court properly construed the promissory note at issue to be a negotiable instrument governed by § 42a-3-104. Accordingly, the defendant's claim fails.

## D

The defendant additionally argues that the court improperly assumed the applicability of § 42a-3-104 because the plaintiff failed to establish that he was indeed the holder in due course of the promissory note at issue. We disagree.

Resolution of the defendant's claim requires a determination of whether the plaintiff falls within the statutory definition of a holder in due course. "The interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law and our review, therefore, is plenary." (Internal quotation marks omitted.) *Allison* v. *Manetta*, 84 Conn. App. 535, 539, 854 A.2d 84, cert. denied, 271 Conn. 931, 859 A.2d 582 (2004).

"To prevail in an action to enforce a negotiable instrument, the plaintiff must be a holder of the instrument or a nonholder with the rights of a holder. . . . Only a holder in due course may enforce a negotiable instrument. . . . Pursuant to General Statutes § 42a-3-301, a [p]erson entitled to enforce an instrument [such as a promissory note] means . . . the *holder* of the instrument . . . . Moreover, General Statutes § 42a-1-201 (20) defines the term *holder*, with respect to a negotiable instrument, as meaning the person in *possession* if the instrument is payable to bearer or, in the case of an instrument payable to an identified person, if the identified person is in possession." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Cadle Co.* v. *Errato*, 71 Conn. App. 447, 456–57, 802

A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002). Here, the court's finding that the note was made payable to the plaintiff cannot seriously be questioned. The negotiable instrument, or the promissory note, was clearly made payable to the plaintiff, who was the person in possession. We conclude, therefore, that the court properly determined that the plaintiff, as the holder in due course, was entitled to enforce payment of the promissory note.

E

Finally, the defendant argues that the court improperly determined that the maturity date of the note was the date on which it became due and payable, September 1, 1998. The defendant maintains instead that the cause of action accrued on the date of his last payment, September 1, 1992, because that was the date of the breach or injury, using the terms of contract law. We agree with the court that, regardless of whether contract law or the Uniform Commercial Code applies, the statute of limitations began to run on the due date, or maturity date, of the note.

First, we note the applicable standard of review. "Whether a particular action is barred by the statute of limitations is a question of law to which we apply a plenary standard of review." *Federal Deposit Ins. Corp.* v. *Owen,* supra, 88 Conn. App. 814.

The final payment date of the note was September 1, 1998, and the action had to be commenced within six years of that date, unless the due date was accelerated "at the option" of the plaintiff, if the defendant failed to make an installment payment. The plaintiff could have, at his option, exercised his right under the terms of the note to bring an action when the defendant failed to make an installment payment. The plaintiff, however, did not exercise that option.

The question to be asked is: If a debtor defaults on an obligation payable in installments by failing to make an installment payment and the lender does not demand payment, has the lender's cause of action automatically accrued as of the date of that default, thereby beginning the statutory limitation period? This court recently addressed that question in *Fleet National Bank* v. *Lahm*, 86 Conn. App. 403, 861 A.2d 545 (2004), cert. denied, 273 Conn. 904, 868 A.2d 744 (2005), explaining that "[t]he answer lies in the fact that although a debtor may be in default on one installment, other installments lie in the future. The fact that a cause of action may have accrued with respect to an installment in default does not necessarily mean that a cause of action has also accrued against future installments that are not even due. . . . When acceleration of the total unpaid debt is optional on the part of the holder of a note, and the holder has given no indication to the debtor that the entire balance is presently due, the cause of action does not accrue until that balance is due pursuant to the particular note or the holder has notified the debtor of an earlier date." (Citation omitted; internal quotation marks omitted.) Id., 408–409.

Here, the plaintiff had the option to accelerate payment of the entire balance of the note when one installment payment was skipped or when any installment payment thereafter was not made, or, alternatively, to await final accrual of its cause of action when the final payment date, as provided in the note, was reached. The plaintiff chose to wait until the final payment date of September 1, 1998, before demanding payment on the note. See id. The court correctly concluded, therefore, that "whether the contract limitation of six years is considered or the [six year] negotiable instrument limitation in § 42a-3-118 applies, neither [barred] the action" when it was brought on January 11, 2002.

## II

The defendant next claims that the court improperly held that the defense of laches was unavailable to him. We disagree. Although we reach the same conclusion as the trial court in its holding that the defense of laches was unavailable, we differ in our reasoning. Although the court based its decision on the merits of the argument, we, however, reach the same conclusion because the doctrine of laches itself is inapplicable. "It is axiomatic that [w]e may affirm a proper result of the trial court for a different reason." (Internal quotation marks omitted.) *Sorban* v. *Sterling Engineering Corp.*, 79 Conn. App. 444, 456, 830 A.2d 372, cert. denied, 266 Conn. 925, 835 A.2d 473 (2003).

We first note the standard of review. "The defense of laches, if proven, bars a plaintiff from seeking equitable relief in a case in which there has been an inexcusable delay that has prejudiced the defendant. . . . First, there must have been a delay that was inexcusable, and, second, that delay must have prejudiced the defendant. . . . A conclusion that a plaintiff has been guilty of laches is one of fact for the trier and not one that can be made by this court, unless the subordinate facts found make such a conclusion inevitable as a matter of law. . . . We must defer to the court's findings of fact unless they are clearly erroneous." (Internal quotation marks omitted.) *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, 76 Conn. App. 599, 612, 821 A.2d 774, cert. denied, 264 Conn. 919, 828 A.2d 617 (2003). Whether the defense of laches was applicable to this action, however, is a question of law. When there is a question of law, our review of the court's decision is plenary. *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, supra, 85 Conn. App. 671.

"The equitable doctrine of laches is an affirmative defense that serves as a bar to a claim for equitable

relief . . . ." (Internal quotation marks omitted.) *Unified School District No. 1* v. *Dept. of Education*, 64 Conn. App. 273, 284, 780 A.2d 154, cert. denied, 258 Conn. 910, 782 A.2d 1253 (2001). *"Laches is purely an equitable doctrine*, is largely governed by the circumstances, and *is not to be imputed to one who has brought an action at law within the statutory period. . . .* It is an equitable defense allowed at the discretion of the trial court *in cases brought in equity."* (Emphasis in original; internal quotation marks omitted.) *John H. Kolb & Sons, Inc.* v. *G & L Excavating, Inc.*, supra, 76 Conn. App. 613. Pursuant to Practice Book § 10-27, "[a] party seeking equitable relief shall specifically demand it as such, unless the nature of the demand itself indicates that the relief sought is equitable relief." See also *Giulietti* v. *Giulietti*, 65 Conn. App. 813, 859, 784 A.2d 905, cert. denied, 258 Conn. 946, 947, 788 A.2d 95, 96, 97 (2001).

In the present case, the defendant claims that the plaintiff sought equitable relief but does not explain where or in what manner that was done. The complaint does not allege an equitable cause of action. See footnote 8. By its allegations, the plaintiff's complaint was one for the collection of payment due on a promissory note, which is an action at law. See *Fleet National Bank* v. *Lahm*, supra, 86 Conn. App. 405. Furthermore, the demand itself does not indicate that equitable relief is sought. See Practice Book § 10-27. Specifically, the plaintiff's prayer for relief sought only "1. Damages; 2. Reasonable attorney's fees; 3. Interest; 4. Costs of this action; and 5. Such other and further relief as the Court deems just and proper." Items (1) through (4) obviously do not seek equitable relief, and the last claim, "[s]uch other and further relief as the Court deems just and proper," is not a specific demand for equitable relief, but rather merely permits the court to fashion a remedy as is just and equitable if no remedy at law is available.

See *Milbauer* v. *Milbauer*, 54 Conn. App. 304, 317, 733 A.2d 907 (1999). In sum, because laches is not available in an action at law and because the plaintiff did not allege a cause of action for equitable relief, the court properly concluded that this action is not barred by the doctrine of laches.

### III

We now turn to the defendant's claim that the court improperly awarded the plaintiff attorney's fees. In particular, the defendant argues that the court improperly relied on the affidavit of the plaintiff's counsel in support of the claim for attorney's fees and then did not afford the defendant an opportunity to contest the affidavit. We disagree.

"Connecticut case law follows the general rule, frequently referred to as the American Rule, that attorney's fees are not allowed to the prevailing party as an element of damages unless such recovery is allowed by statute or contract." (Internal quotation marks omitted.) *Atlantic Mortgage & Investment Corp.* v. *Stephenson*, 86 Conn. App. 126, 132, 860 A.2d 751 (2004). Moreover, "[w]here a contract provides for the payment of attorney's fees by a defaulting party, those fees are recoverable solely as a contract right. . . . Therefore, the language of the note governs the award of fees . . . . Such attorney's fees incurred language has been interpreted by our Supreme Court . . . as permitting recovery upon the presentation of an attorney's bill, so long as that bill is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the trier's own expert judgment." (Citations omitted; internal quotation marks omitted.) *Connecticut National Bank* v. *N. E. Owen II, Inc.*, 22 Conn. App. 468, 476–77, 578 A.2d 655 (1990); see also *Atlantic Mortgage & Investment Corp.* v. *Stephenson*, supra, 134.

The note provides in relevant part: "the undersigned jointly and severally promise(s) to pay to David W. Florian, Sr., or order, the sum of fifteen thousand dollars . . . together with all taxes levied on this note against the holder hereof and all costs of collection, *including reasonable attorney's fees incurred in any action brought to collect this note* . . . ." (Emphasis added.) That provision of the note clearly permits recovery of the attorney's fees incurred in this action brought to collect on the note. Consequently, the plaintiff was permitted recovery on the presentation of an attorney's bill at trial as long as the bill was not unreasonable on its face and was not shown to be unreasonable. See *Connecticut National Bank* v. *N.E. Owen II, Inc.*, supra, 22 Conn. App. 476–77.

Our Supreme Court's decision in *Smith* v. *Snyder*, 267 Conn. 456, 839 A.2d 589 (2004), provided further guidance to our trial courts and to this court when it held: "[W]hen a court is presented with a claim for attorney's fees, the proponent must present to the court at the time of trial . . . a statement of the fees requested and a description of services rendered. Such a rule leaves no doubt about the burden on the party claiming attorney's fees and affords the opposing party an opportunity to challenge the amount requested at the appropriate time. . . . Parties must supply the court with a description of the nature and extent of the fees sought, to which the court may apply its knowledge and experience in determining the reasonableness of the fees requested." (Citations omitted.) Id., 479–80.

This case is distinguishable from *Smith*, in which our Supreme Court held that to secure an order for counsel fees, a party must submit more than a mere demand to the court and that a party seeking counsel fees cannot rely solely on the court's general knowledge of the reasonable range of legal fees in fashioning the award of counsel fees. Here, the plaintiff submitted more than

a mere demand to the court. See id. The plaintiff, at trial, submitted an affidavit of attorney's fees, which attested to an hourly rate of $150, and listed descriptions of the attorney's various actions along with the individual amounts of time consumed and the date performed for each of the enumerated items. We are persuaded that the plaintiff supplied the court with a sufficient description of the nature and extent of the fees sought, to which the court applied its knowledge and experience and concluded that the requested fees were reasonable. Thus, because the plaintiff's affidavit provided the necessary details to support his claim that he had incurred legal fees in the amount requested, the court properly relied on the affidavit in support of the plaintiff's request for attorney's fees.

Regarding the defendant's argument that he was not afforded an opportunity to object to the request for attorney's fees, the plaintiff responds that the defendant failed to object and that the failure to object to the fees requested was, in effect, a waiver of any objection. We agree with the plaintiff.

In *Smith*, our Supreme Court addressed the question of whether a party's right to contest the reasonableness of attorney's fees is waived if not asserted at trial. In that case, the court concluded that "the defendants, in failing to object to the plaintiffs' request for attorney's fees, effectively acquiesced in that request, and, consequently, they now will not be heard to complain about that request." Id., 481.

Similarly, in this case, a review of the record reveals that the defendant did not object to the plaintiff's request for attorney's fees. The plaintiff filed an affidavit and a request for attorney's fees with the court on November 7, 2003, and the decision was not rendered until January 6, 2004. The nearly two month period between the filing of the affidavit and request and the

decision should have provided the defendant sufficient time in which to respond. Moreover, the transcript indicates that the defendant was aware that he could review the request for fees and file an objection. We believe that the award was proper. The defendant was not prevented from raising an objection but instead waived that claim by failing to object. By failing to object, the defendant effectively acquiesced in that request. See id. Accordingly, we conclude that the court acted well within its discretion in making the award.

IV

In his final claim, the defendant asserts that the court abused its discretion by restricting his cross-examination of the plaintiff at trial. That claim lacks merit.

Before addressing the defendant's claim, we set forth the standard of review. "The trial court has wide discretion to determine the relevancy of evidence and the scope of cross-examination. Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . Furthermore, [t]o establish an abuse of discretion, [the defendant] must show that the restrictions imposed upon [the] cross-examination were clearly prejudicial. . . . In order to establish reversible error on an evidentiary impropriety, however, the defendant must prove both an abuse of discretion and a harm that resulted from such abuse." (Citations omitted; internal quotation marks omitted.) *State* v. *Ramos*, 261 Conn. 156, 175, 801 A.2d 788 (2002).

We note initially that the defendant's briefing of his claim is sparse, and it is unclear exactly how he claims the court restricted him from presenting "meaningful" cross-examination and how the restrictions imposed on the cross-examination clearly prejudiced him. See id. Specifically, the defendant's briefing of the evidentiary claim lacks the verbatim statement of the relevant

objections and the trial court's ruling on those objections as required pursuant to Practice Book § 67-4 (d) (3)[9] for appeals of evidentiary rulings. See *Northeast Ct. Economic Alliance, Inc.* v. *ATC Partnership*, 272 Conn. 14, 51 n.23, 861 A.2d 473 (2004). Our Supreme Court stated in *Aspiazu* v. *Orgera*, 205 Conn. 623, 636–37 n.5, 535 A.2d 338 (1987), that "[w]hen raising evidentiary issues on appeal, all briefs should identify clearly what evidence was excluded or admitted, where the trial counsel objected and preserved his rights and why there was error." Further, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Ward* v. *Greene*, 267 Conn. 539, 546, 839 A.2d 1259 (2004). Because the defendant, however, gives some indication as to what he sought to pursue and cites to relevant portions of the transcript, we will review the defendant's arguments.

We gather from his brief that the defendant intended during the trial to challenge the validity of the promissory note at issue by establishing fraud in its making. The defendant, however, fails to indicate what he would have shown to rebut the note's validity and how he was prejudiced by not being able to do so.

Furthermore, although the defendant claims that the court "repeatedly prevented [him] from pursuing lines of questioning" and, thus, excluded relevant evidence surrounding the circumstances of the note's making, "[i]t is a well established rule of evidence that cross-

[9] Practice Book § 67-4 (d) (3) provides: "When error is claimed in any evidentiary ruling in a court or jury case, the brief or appendix shall include a verbatim statement of the following: the question or offer of exhibit; the objection and the ground on which it was based; the ground on which the evidence was claimed to be admissible; the answer, if any; and the ruling."

examination is restricted to matters covered on direct examination. . . . A question [on cross-examination] is within the scope of the direct examination if it is designed to rebut, impeach, modify, or explain any of the defendant's direct testimony. . . . The trial court is given broad discretion to determine whether a particular line of cross-examination is within the scope of the direct examination." (Citations omitted; internal quotation marks omitted.) *State* v. *Ramos*, supra, 261 Conn. 176–77.

In the present case, the plaintiff's counsel first offered the plaintiff as a witness in order to admit the promissory note into evidence as a full exhibit and to establish nonpayment of the promissory note at issue. During cross-examination of the plaintiff, the defendant's counsel attempted to challenge the validity of the note and to establish fraud in the execution of the note, areas that had not been covered on direct examination. Upon doing so, the defendant was informed unambiguously that his cross-examination had to relate to what was covered in the original direct examination. Additionally, both the court and the plaintiff's counsel at different times during the trial informed the defendant's counsel that his questions should be raised on direct examination rather than on cross-examination. The plaintiff's counsel even suggested, "Your Honor, I think it would be appropriate, then, that he introduce the issue of fraud through his client and then my client will be available for questioning on it, if that's necessary." Further, although the defendant's counsel listed three witnesses, including the plaintiff and the defendant, on his trial management order, in addition to being informed during the trial that he could call his own witnesses for direct examination in order to establish the foundation for his claims, the defendant chose not to call any witnesses. Consequently, the defendant's claim of harm was of his own making. We conclude, therefore, that

the court did not abuse its discretion in excluding relevant evidence.

The judgment is affirmed.

In this opinion the other judges concurred.