******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SEAN O'KANE A.I.A. ARCHITECT, P.C. *v.* GORAN
PULJIC ET AL.
(AC 35245)

Beach, Sheldon and Keller, Js.

*Argued October 29, 2013—officially released March 18, 2014*

(Appeal from Superior Court, judicial district of

Stamford-Norwalk, Hon. Kevin Tierney, judge trial referee.)

*Alan R. Spirer*, for the appellant (plaintiff).

*Michael V. Pepe*, with whom were *Justin Garcia* and, on the brief, *Raymond A. Garcia*, for the appellees (defendants).

*Opinion*

BEACH, J. The plaintiff, Sean O'Kane A.I.A. Architect, P.C.,[1] appeals from the judgment of the trial court in favor of the defendants, Goran Puljic and Melinda Puljic. The plaintiff claims that the court erred in (1) concluding that his breach of contract claim was barred by the statute of limitations; (2) finding that the parties did not enter into a "standstill" agreement, thus tolling the statute of limitations; and (3) concluding that the count of his complaint alleging unjust enrichment was barred by the doctrine of laches. We affirm in part and reverse in part the judgment of the trial court.

The action was commenced by service of process on June 29, 2010. The plaintiff later filed an amended complaint alleging (1) breach of contract for failure to pay for architectural services, and (2) unjust enrichment. By way of special defenses, the defendants alleged that the breach of contract claim was barred by the applicable statute of limitations, General Statutes § 52-576, and that the unjust enrichment claim was barred by the doctrine of laches. In the plaintiff's reply to the defendants' special defense asserting the statute of limitations, the plaintiff alleged, as a "matter in avoidance," that the parties had agreed not to "bring claims against one another" until after arbitration proceedings involving the builder, a third party, were concluded, and thus the statute of limitations had been tolled.

The parties entered into a stipulation agreeing to bifurcate the trial, under which the facts and issues relating to the defendants' special defenses would be decided prior to the adjudication of the other facts and issues in this case. Accordingly, the court, in its November 28, 2012 decision, addressed only the special defenses alleging that any recovery was barred by the statute of limitations and laches.

The following facts were found by the trial court. In December, 2000, the plaintiff and Melinda Puljic executed a contract for architectural services (contract). The contract was addressed to: "Mr. & Mrs. G. Puljic." Both defendants were the owners of a house in Darien. Pursuant to the contract, the plaintiff was to perform restoration and alteration work on "two adjacent houses built almost 200 years ago, improved with additions and alterations joining the two houses into one building." On October 10, 2001, both defendants and E. M. Rose Builders, Inc. (Rose), entered into a construction contract (construction contract) pursuant to which Rose commenced work. The plaintiff was not a party to the construction contract. The goal of the project was to complete the house by December, 2002.

The plaintiff submitted twenty-three serially numbered invoices to the defendants for architectural services. The defendants paid invoices one through seventeen, but failed to pay invoices eighteen through

twenty-three. The total of the unpaid invoices was $92,201.35, which the plaintiff claimed in damages in his complaint. The unpaid invoices were for work allegedly done during the period from July through December, 2002. No invoices were submitted into evidence for architectural services rendered after December 31, 2002, and there was no testimony that any such invoices were prepared. All invoices were addressed and billed to both defendants.

The court found that the breach of contract claim was barred by § 52-576, and that the unjust enrichment claim was barred by the doctrine of laches. This appeal followed.

I

The plaintiff first claims that the court erred in concluding that the breach of contract claim was barred by the six year statute of limitations set forth in § 52-576. He specifically argues that the court erred in concluding that the continuous representation doctrine did not apply.[2] He contends that pursuant to the architectural contract and the construction contract, his services on the project were to continue until the project was complete—in other words, until the issuance of the certificate of occupancy and zoning compliance on September 25, 2005. He argues, therefore, that under the continuous representation doctrine, the breach of contract claim accrued on September 25, 2005, and the action was commenced within six years of that date. We disagree, and affirm the court's holding that the breach of contract claim is barred by the statute of limitations.[3]

Section 52-576 (a) provides in relevant part: "No action for an account, or on any simple or implied contract, or on any contract in writing, shall be brought but within six years after the right of action accrues . . . ." "[I]n an action for breach of contract . . . the cause of action is complete at the time the breach of contract occurs, that is, when the injury has been inflicted. . . . While the statute of limitations normally begins to run immediately upon the accrual of the cause of action, some difficulty may arise in determining when the cause or right of action is considered as having accrued. . . . The true test for determining the appropriate date when a statute of limitations begins to run is to establish the time when the plaintiff first successfully could have maintained an action. That is, an action cannot be maintained until a right of action is complete and hence, the statute of limitations cannot run before that time." (Citation omitted; footnote omitted; internal quotation marks omitted.) *I. Rosenfield* v. *David Marder & Associates, LLC*, 110 Conn. App. 679, 685–86, 956 A.2d 581 (2008). The question of whether a party's claim is barred by the statute of limitations is one of law subject to plenary review. *Certain Underwriters at Lloyd's, London* v. *Cooperman*, 289 Conn. 383, 407–408, 957 A.2d 836 (2008).

Several doctrines tolling the statutes of limitations have emerged for policy reasons. The continuing course of conduct doctrine, the continuous treatment doctrine, and the continuous representation doctrine present similar solutions to similar problems. The plaintiff argues that this case is appropriately subject to the continuous representation doctrine. That doctrine, however, has been applied thus far only to contexts involving attorneys, where ethical considerations inform the preference to delay accrual, from the time of the act or omission complained of until the attorney's representation has ended. "[O]ur Supreme Court [in *DeLeo* v. *Nusbaum*, supra, 263 Conn. 596–97] adopted a modified continuous representation doctrine for cases of alleged legal malpractice during litigation, tolling the statute of limitations contained in § 52-577 when a plaintiff can show: (1) that the defendant continued to represent him with regard to the same underlying matter; and (2) either that the plaintiff did not know of the alleged malpractice or that the attorney could still mitigate the harm allegedly caused by that malpractice during the continued representation period. . . . The court [in *DeLeo*] noted that it anticipate[d] that these standards would be applicable to all attorney malpractice cases [but] acknowledged that the implications of tolling for attorney-client relationships in the context of litigation may not be the same as those for other attorney-client relationships. Accordingly, [the] holding [was] *limited to* cases in which an attorney is *alleged* to have committed *malpractice during the course of litigation*." (Citation omitted; emphasis altered; internal quotation marks omitted.) *Piteo* v. *Gottier*, 112 Conn. App. 441, 447, 963 A.2d 83 (2009); see also *Rosato* v. *Mascardo*, 82 Conn. App. 396, 407, 844 A.2d 893 (2004) ("[T]he holding of *DeLeo* is quite limited. In a footnote, the court explicitly limited its holding to 'cases in which an attorney is alleged to have committed malpractice during the course of litigation.' . . . Because the breadth of the holding was limited even within the context of legal malpractice, this court declines to read that holding expansively and to apply it to cases involving medical malpractice.").

Although he seeks to benefit from the doctrine he labels the "continuous representation doctrine," the plaintiff relies on cases that, strictly speaking, do not involve continuous representation, but rather hold that, in some instances, bills are not due and owing until after the job for which they were incurred is complete. These cases are more apt, yet are ultimately unavailing.

In *Gaylord Hospital* v. *Massaro*, 5 Conn. App. 465, 466, 499 A.2d 1162 (1985), the plaintiff hospital provided services to the defendant's spouse pursuant to a contract signed by the plaintiff. The action for payment was brought more than six years after the patient was hospitalized but less than six years after the patient

was released. Id. This court held that because the finder of fact determined that the contract contemplated a continuous, indivisible course of treatment, the action did not accrue until the completion of treatment, and thus was not barred. Id., 469. The court expressly stated: "In an action for breach of contract, the cause of action is complete upon the occurrence of the breach, that is, when the injury has been inflicted. . . . Where services are continuously rendered over an extended period of time under an express or implied contract *which does not fix the term of employment nor the time when compensation shall be payable*, many courts have regarded the contract as an entire one, raising an implied condition that the compensation shall not be due until the termination of the service, so that the statute of limitations will not begin to run against the claim for compensation until the employment is ended." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 467–68.[4]

In the present case, in contrast, the contract specified the time that periodic invoices were due. Under a section entitled "billings and payments," the contract provided that "[i]nvoices for services shall be submitted monthly and are due upon receipt and are past due fifteen (15) days after the invoice date." Therefore, although the contract provided that the plaintiff was to perform services that could conceivably continue until the completion of the project,[5] the contract also divided payment into monthly segments and provided that the plaintiff was to bill each month for work performed and that the invoices were to be paid within fifteen days of the invoice date. Invoices eighteen through twenty-three pertained to discrete services provided during certain time frames. Hence, a breach of contract for nonpayment of each invoice would have occurred when the deadline for payment arrived, fifteen days after the invoice date,[6] and no payment was made.

Further, even if the contractual expectation of continuous performance, as described in *Gaylord Hospital*, were read by implication into the contract, relief would be thwarted by the court's findings that the plaintiff's services were complete by and the contract was terminated no later than February 3, 2003. The findings are not clearly erroneous. See *Miller* v. *Guimaraes*, 78 Conn. App. 760, 766–67, 829 A.2d 422 (2003) ("With regard to the trial court's factual findings, the clearly erroneous standard of review is appropriate. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." [Internal quotation marks omitted.]). The "scope of work" section of the contract[7] did not specifically provide that the plaintiff would assist the defendants in obtaining a certificate of occupancy. On cross-examination, the plaintiff admitted that the tasks

detailed in the "scope of work" section of the contract were completed by the end of 2002. No invoices were submitted for architectural services rendered after December 31, 2002. From the fact that the defendants did not hire another architect, the court could have inferred that the architectural services were completed. Further, Goran Puljic stated to the plaintiff in January or February, 2003, that "I have paid you enough," and wrote in a January, 2003 e-mail to the plaintiff that "I don't think we need anything from you right now." From this evidence, it was not clearly erroneous for the court to determine that the contract was terminated in February, 2003. For the foregoing reasons, we conclude that the continuous representation doctrine or similar principles do not apply in this case,[8] and therefore the plaintiff's claim is without merit.

## II

The plaintiff next claims that the court erred in determining that the parties did not enter into a "standstill" agreement, under which the plaintiff agreed not to bring an action against the defendants until the conclusion of a dispute between the defendants and their contractor, Rose. As a result, the plaintiff argues, the statute of limitations was tolled until the resolution of the dispute in January, 2007. We disagree.

The record reveals that the defendants had filed a counterclaim alleging, in part, that "the plaintiff and the defendants agreed that they would not bring claims against one another related to the project until after the litigation between defendants and their contractor was resolved." That allegation was later withdrawn and an amended counterclaim was filed. This withdrawn pleading, and the plaintiff's cursory agreement with it at trial, constitute the sole evidentiary support for the plaintiff's claim. The court found that such an agreement had not been made.

The court found that Rose called the plaintiff, on April 27 and June 6, 2005, as a witness in its arbitration hearing involving the defendants. The arbitration proceeding was resolved in January, 2007, in Rose's favor. The court did not agree with the plaintiff's argument that the defendants were bound by a judicial admission in their counterclaim that a standstill agreement had been entered into. The court concluded that because the defendants withdrew the pleading in which the statement appeared, the statement was no longer a binding judicial admission, but rather had become an evidential admission that could be explained or denied at trial.[9] The court found that the plaintiff offered no credible evidence of a standstill agreement. The court noted that the entirety of the evidence of a standstill agreement was, in essence, a withdrawn pleading and the plaintiff's affirmative answer when asked at trial if he agreed with the allegations of the defendants' counterclaim pertaining to the existence of a standstill

agreement. No documentary evidence was offered in support of this claim.

The plaintiff argues that the court ignored the defendants' evidence. The court found credible the testimony of Goran Puljic that he never entered into a standstill agreement with the plaintiff, and found the plaintiff's testimony regarding the existence of a standstill agreement not to be credible. It was within the province of the trial court to determine credibility, and it did not err in so doing. "The sifting and weighing of evidence is peculiarly the function of the trier [of fact]. . . . [N]othing in our law is more elementary than that the trier [of fact] is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party. . . . That determination of credibility is a function of the trial court." (Citations omitted; internal quotation marks omitted.) *Heritage Square, LLC* v. *Eoanou*, 61 Conn. App. 329, 333, 764 A.2d 199 (2001). Accordingly, the plaintiff's claim is without merit.

### III

The plaintiff last claims that the court erred in concluding that the count of his complaint alleging unjust enrichment was barred by the doctrine of laches. We remand the case for resolution of the issue of laches by the trial court.

"The equitable remedy of unjust enrichment may be invoked when justice requires that a party be compensated for . . . services rendered under a contract, and no [legal] remedy is available by an action on the contract. . . . As an equitable right, unjust enrichment is based on the principle that in a given situation, it is contrary to equity and good conscience for the defendant to retain a benefit [that] has come to him at the expense of the plaintiff. . . . Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Citation omitted; internal quotation marks omitted.) *Nation Electrical Contracting, LLC* v. *St. Dimitrie Romanian Orthodox Church*, 144 Conn. App. 808, 815, 74 A.3d 474 (2013).

"[T]he defense of laches does not apply unless there is an unreasonable, inexcusable, and prejudicial delay in bringing suit. . . . Delay alone is not sufficient to bar a right; the delay in bringing suit must be unduly prejudicial." (Citations omitted; internal quotation marks omitted.) *Cummings* v. *Tripp*, 204 Conn. 67, 88, 527 A.2d 230 (1987). "Whether the defense of laches was applicable to [an] action . . . is a question of law. When there is a question of law, our review of the court's decision is plenary." *Florian* v. *Lenge*, 91 Conn.

App. 268, 281, 880 A.2d 985 (2005). Laches may be available as a defense to an equitable cause of action, whereas the statute of limitations is applicable to legal causes. Id., 281–82.

The court found that the seven and one-half year delay in bringing the action was prejudicial to the defendants.[10] The court reasoned that the plaintiff sought $92,201.35 in damages, a 1.5 percent monthly service charge as provided for in the contract, plus interest. The court assumed that the service charge would commence on the date of the last bill, February 3, 2003, and concluded that the defendants potentially were facing a monetary claim in excess of $255,213.29. The court computed the potential harm in delay by reference to damages provided for in the *contract*.

The plaintiff contends that he properly claimed unjust enrichment as to Goran Puljic because he was not a party to the contract, but as joint owner of the house in Darien, he benefited from the plaintiff's architectural services and did not pay for all of the services; he thus was unjustly enriched. He argues that the court erred in applying contract provisions in its assessment of the prejudice necessary for application of the special defense of laches. The defendants, on the other hand, argue that the court's finding regarding prejudice was proper and, in the alternative, that Goran Puljic was in fact a party to the contract, and, thus, the claim against him was also subject to the statute of limitations defense. They argue that, although only Melinda Puljic signed the contract, both defendants were actually parties to it because the contract was addressed to "Mr. and Mrs. G. Puljic" and Goran Puljic testified that he engaged the plaintiff.

The plaintiff's claim regarding laches depends, in part, on whether Goran Puljic was a party to the contract. If he was a party to the contract, then a claim for unjust enrichment as to him would not be appropriate. See *Feng* v. *Dart Hill Realty, Inc.*, 26 Conn. App. 380, 383, 601 A.2d 547 ("[p]roof of a contract enforceable at law precludes the equitable remedy of unjust enrichment"), cert. denied, 223 Conn. 912, 612 A.2d 59 (1992). If, however, Goran Puljic was not a party to the contract, then the plaintiff could appropriately claim unjust enrichment as to him. The court apparently found it unnecessary to decide whether Goran Puljic was a party to the contract, because it found that the defense of laches barred the claim in any event. We note, however, that the court applied an incorrect standard regarding the prejudice component of laches. Damages can be assessed pursuant to an unjust enrichment claim only when no contractual relief is available. The potential assessment of contractually mandated damages, then, cannot constitute prejudice for the purpose of laches as a defense to unjust enrichment.

Whether Goran Puljic's signature was required in this

case to form an enforceable contract between him and the plaintiff or whether a contract existed between him and the plaintiff regardless of the lack of his signature, are questions of fact to be decided by the trial court. See, e.g., *Schwarzschild* v. *Martin*, 191 Conn. 316, 321–22, 464 A.2d 774 (1983) ("[i]n the absence of a statute requiring a signature . . . parties may become bound by the terms of a contract, even though they do not sign it, where their assent is otherwise indicated" [internal quotation marks omitted]); *MD Drilling & Blasting, Inc.* v. *MLS Construction, LLC*, 93 Conn. App. 451, 454, 889 A.2d 850 (2006) (existence of contract question of fact to be determined by trier of fact).

Accordingly, we remand the case to the trial court for a determination of whether Goran Puljic was a party to the contract. If the court finds that he was not a party, then the trial court must determine whether the defendants' special defense of laches bars the unjust enrichment claim against him. If, on the other hand, the court finds that he was a party to the contract, then the court must render judgment in his favor on that claim under the statute of limitations.

The judgment is reversed with respect to the unjust enrichment count of the complaint and the case is remanded for further proceedings in accordance with the preceding paragraph. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The court stated that "[a]ny issue as to whether the proper plaintiff is Sean O'Kane individually, Sean O'Kane Architect AIA or Sean O'Kane, AIA Architect, P.C., is not relevant to either the statute of limitations or laches defense, which are the only two issues before this court in these bifurcated proceeding[s]." For the sake of clarity, references in this opinion are to Sean O'Kane individually."

[2] Citing authority such as *Lee* v. *Brenner, Saltzman & Wallman, LLP*, 128 Conn. App. 250, 15 A.3d 1215, cert. denied, 301 Conn. 926, 22 A.3d 1277 (2011); and *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 541 A.2d 472 (1988), the court referred specifically to the continuing course of conduct doctrine rather than the continuous representation doctrine. The court, however, found facts applicable to both doctrines, which are quite similar in theory and in effect. The plaintiff claims that the facts of this case compel the conclusion that the statute of limitations ought to be tolled. We determine, however, that the continuous representation doctrine does not apply in the factual context of this case.

[3] The court concluded, on alternate grounds, that the plaintiff could not prevail on his claim that the statute of limitations had been tolled by the continuous representation doctrine because he pleaded only a standstill agreement, and not the continuous representation doctrine, as a matter in avoidance.

The defendants, citing Practice Book § 10-57, argue that the continuous representation doctrine must be affirmatively pleaded in avoidance of the defendants' special defense of the statute of limitations. Section 10-57 provides in relevant part: "Matter in avoidance of affirmative allegations in an answer or counterclaim shall be specially pleaded in the reply." The plaintiff argues that § 10-57 does not apply because "[a] plaintiff is required to affirmatively plead claims in avoidance of the statute of limitations such as facts evidencing a tolling of the statute of limitations. . . . However, the continuous representation doctrine is not a tolling doctrine . . . [it] merely determines the accrual of the right of action and does not suspend or toll an action that has already accrued." (Citation omitted.)

We do not necessarily agree. The plaintiff's stance is premised on the proposition that "tolling" must be an interruption within the prescribed

period, rather than a delay at the outset. Our case law, however, rather clearly refers to tolling as also encompassing a delay in accrual of the cause of action. See *DeLeo* v. *Nusbaum*, 263 Conn. 588, 597, 821 A.2d 744 (2003); see also 51 Am. Jur. 2d 546, Limitation of Actions § 148 (2000). The continuous representation doctrine tolls the accrual of the cause of action, essentially deferring it until representation has ended, despite the fact that the actionable injury or harm may have already occurred. See, e.g., *Deleo* v. *Nusbaum*, supra, 586–97 (describing continuous representation doctrine as "tolling" statute of limitations).

[4] The plaintiff also relies on *Mitchell* v. *Guardian Systems, Inc.*, 72 Conn. App. 158, 804 A.2d 1004, cert. denied, 262 Conn. 903, 810 A.2d 269 (2002). In that case, the plaintiff sought attorney's fees, and the issue was whether the action was barred by the statute of limitations. Id., 160–61. The services for which the fees were charged had been performed more than six years prior to the commencement of the action, but the finder of fact found that the representation had terminated within six years, and the action was not barred. Id., 161. "When the claim for attorneys' fees is based upon continuous legal representation, the statute of limitations does not begin to run until the legal services are complete . . . . The statute of limitations is tolled during the pendency of the continuous representation." Id., 164. The attorney had the ethical duty to represent the plaintiff until he was relieved of his obligation. Id. In the present case, the court found that the "representation" by the plaintiff had been terminated prior to the six year period, and, in any event, the contract specifically set the dates that payments were due.

[5] The contract provides, under a section entitled "scope of work," that the plaintiff would provide the following architectural services for the project: "Field measuring, photography, existing condition drawings, design and construction drawings, specifications, budget estimates and consultation for the proposed additions and alterations to the above residence. The drawings shall consist of small scale plans and sketches at the preliminary design stage followed by complete construction drawings, engineered framing plans, elevations, sections, details and lighting plans at appropriate scales as necessary for the proper construction of the Work. Also included shall be window, door and finish schedules as well as a Project Manual of specifications. Site visits shall be made at regular intervals to review the performance and quality of the construction."

[6] The dates for invoices eighteen through twenty-three range from August, 22, 2002 until February 3, 2003, all of which are outside the six year limitation period.

[7] See footnote 5 of this opinion.

[8] The plaintiff makes additional arguments including the following: the court "appears to labor under the misapprehension that the plaintiff was engaged to render only design services"; the court's observation that the plaintiff was not a signatory to the construction contract "misses the mark"; "the court makes much" of the fact that the plaintiff was called to testify as a witness by Rose but that fact "is of no moment"; the fact that the plaintiff did not bill the defendants for consultation services and contract administration does not change the fact that the plaintiff continued to render services pursuant to the contract; both parties stated at trial that the defendants did not terminate the contract; and the court noted that the defendants did not hire another architect or designate another architect pursuant to the construction contract. None of these arguments alter our conclusion that the continuous representation doctrine or other doctrine delaying accrual did not toll the statute of limitations.

[9] See, e.g., *Dreier* v. *Upjohn Co.*, 196 Conn. 242, 244, 492 A.2d 164 (1985) ("statements in withdrawn or superseded pleadings, including complaints, may be considered as evidential admissions by the party making them").

[10] The court found that the plaintiff had not pleaded in avoidance of the defendants' special defense of laches, but nevertheless addressed the claim.