# NATION ELECTRICAL CONTRACTING, LLC *v.*
## ST. DIMITRIE ROMANIAN ORTHODOX
## CHURCH ET AL.
### (AC 34599)

DiPentima, C. J., and Lavine and Robinson, Js.

Argued April 22—officially released August 13, 2013

*Michael S. Lynch,* for the appellant (named defendant).

*Anthony R. Minchella,* with whom was *Robert M. Patillo,* legal intern, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant St. Dimitrie Romanian Orthodox Church appeals from the judgment of the trial court finding it jointly and severally liable with the defendant Primrose Construction Company, Inc. (Primrose), to the plaintiff, Nation Electrical Contracting, LLC, for damages of $34,900 and prejudgment interest of $11,621.70.[1] The defendant claims that the court improperly (1) rendered judgment against it on a theory of unjust enrichment despite evidence that it had paid all sums due and owing under its construction contract with Primrose, which necessarily included payment for the work done by the plaintiff as a subcontractor of

---

[1] John N. Guedes, Primrose's president, also was a defendant in this action. The sole count against Guedes, however, was withdrawn prior to trial by virtue of its exclusion from the operative second amended complaint. Because Primrose, which was defaulted by the trial court, did not appeal from the judgment rendered against it nor participate in the present appeal, and because Guedes is no longer a party to the action, we will refer to St. Dimitrie Romanian Orthodox Church as the defendant throughout this opinion.

Primrose, and (2) awarded prejudgment interest pursuant to General Statutes § 37-3a where there was no basis in law or in fact to award such interest. We affirm the judgment of the trial court.

The following facts, which were found by the court or are undisputed, and procedural history are relevant to our resolution of the claims on appeal. The defendant entered into a written contract with Primrose in 2006, for the construction of a new church in Easton. Primrose agreed to act as the general contractor for the project, and the defendant agreed to pay Primrose $2,954,250 plus extras. Primrose retained a number of subcontractors to help with the project, including accepting a bid of $109,795 from the plaintiff to perform electrical work. The plaintiff never entered into any contractual agreement with the defendant.

In October and November, 2007, the plaintiff submitted invoices to Primrose requesting progress payments of $10,000 and $12,000, respectively. Primrose later submitted its own invoice for progress payments to the defendant, which included those sums sought by the plaintiff. The defendant paid Primrose, and Primrose paid the plaintiff the sum due on the October and November invoices.

On January 1, 2008, the plaintiff submitted a third invoice to Primrose for $40,000.[2] On February 18, 2008,

[2] The court states in its memorandum of decision that the third invoice was for $42,000, although the copy submitted as an exhibit at trial indicates $40,000. Nevertheless, the court also found with regard to that third invoice that it "represented a net payment due [the plaintiff] of $34,900." Thirty-four thousand nine hundred dollars is the amount that the plaintiff alleged it was owed for work and materials in its complaint and that same amount also is reflected in another invoice that the plaintiff submitted directly to the defendant dated February 27, 2008, which was before the court as plaintiff's exhibit 5. When asked at trial about the discrepancy between the $40,000 invoice and the $34,900 invoice, the plaintiff, through its owner/operator, indicated that it had rounded up the numbers for the $40,000 invoice "because there's always retainage held back on a project, and the $40,000, knowing that they were going to withhold the retainage would have given me close to this amount so I can cover my expenses."

prior to the completion of the church, Primrose left the job and stopped working on the project.[3] The plaintiff also stopped its work at that time. Up to that date, the plaintiff had complied with all the terms and conditions of its contract with Primrose, and all the parties agreed that the plaintiff's work was completed in a workmanlike manner.[4]

On February 23, 2008, Primrose submitted a final progress billing to the defendant. Primrose indicated on the progress billing that the defendant had thus far paid Primrose $1,500,795.15 on the contract, and Primrose sought an additional $241,424.11 for the work performed up to February 18, 2008, which included the sum sought by the plaintiff in its January 1, 2008 invoice. The defendant did not make any payments on the February 23, 2008 invoice to Primrose nor did it make any direct payments to the plaintiff. Primrose and several of its subcontractors, including the plaintiff, filed mechanic's liens against the defendant's property to secure the balance they claimed remained due to them.

In November, 2008, the plaintiff commenced the present action. The original complaint contained four counts. Count one sought to foreclose on the plaintiff's mechanic's lien, count two alleged unjust enrichment on the part of the defendant, count three sounded in breach of contract against Primrose, and count four alleged liability on the part of John N. Guedes based on his personal guarantee of Primrose's performance under the contract with the plaintiff. The plaintiff filed a first amended complaint that included an additional

---

[3] At trial, the parties informed the court that there was a dispute over whether Primrose abandoned the job or was fired, but indicated that the issue was not relevant to the matter before the court and stipulated that Primrose left the job and was no longer working on the project as of February 18, 2008.

[4] The plaintiff's work later also passed a final inspection conducted by the building inspector of the town of Easton.

count against the defendant sounding in quantum meruit. The plaintiff later filed a second amended, and operative, complaint that dropped the foreclosure count and the count against Guedes.

In March, 2009, Primrose filed an action to foreclose its mechanic's lien on the defendant's property. The defendant filed an application in that matter to discharge Primrose's lien. On December 24, 2009, following briefing and an evidentiary hearing, the court, *Levin, J.*, issued an order granting the application to discharge the lien. See *Primrose Construction Co.* v. *St. Dimitrie Romanian Orthodox Church*, Superior Court, judicial district of Fairfield, Docket No. CV-09-5023147-S (December 24, 2009). In the order, Judge Levin included a number of findings "[b]y clear and convincing evidence." Judge Levin found, inter alia, that the defendant had agreed to pay Primrose $2,954,250 for the construction of the church, that $99,970.10 in change orders had been made, that the defendant thus far had paid Primrose $1,500,795.15, that the work performed by Primrose or its subcontractors was not of a workmanlike manner, that the defendant reasonably had expended in excess of $300,000 to repair the deficient workmanship, that after Primrose abandoned the contract the defendant paid more than $3,000,000 to complete the work that Primrose had agreed to perform, and, finally, that "[t]here is no balance owing or fund which [Primrose] can lien." On the basis of those findings, Judge Levin concluded that Primrose had failed to meet its burden of establishing probable cause for sustaining the validity of its mechanic's lien.

The present action was tried thereafter to the court, *Hon. Richard P. Gilardi*, judge trial referee. At some point prior to trial, the parties agreed that Judge Levin's December 24, 2009 order, including all factual findings therein, should be entered into evidence and that the court should consider Judge Levin's factual findings in

reaching its decision in the present case.[5] The order was admitted at trial as the defendant's exhibit 3.

The court issued a memorandum of decision on January 24, 2012. With regard to the unjust enrichment count, the court first rejected the defendant's argument that it was entitled to a set off with respect to the value of any benefit allegedly received from the plaintiff because, due to damage, it was able to use only 35 or 40 percent of the electrical work provided by the plaintiff. The court found that the alleged damage occurred after the plaintiff had completed the work, without any complaint as to the quality of the work from the defendant, and that the damage was self-inflicted by the defendant or by a subsequent contractor.

The court next rejected the defendant's claim that the plaintiff should be prohibited from claiming unjust enrichment because the defendant had paid Primrose everything it was owed under the construction contract prior to its abandonment of the project, which necessarily included payment for the work performed by its subcontractors, and allowing an unpaid subcontractor subsequently to sue for unjust enrichment would result in the defendant paying twice for the same benefit. See *Providence Electric Company* v. *Sutton Place, Inc.*, 161 Conn. 242, 246, 287 A.2d 379 (1971). In rejecting that argument, the court reasoned that the defendant "never introduced any evidence, testimony or even a claim that

---

[5] At oral argument before this court, counsel for the defendant indicated that the stipulation between the parties concerning Judge Levin's order was oral, not written. The transcripts provided to this court on appeal do not contain a record of the parties' stipulation, although there are references to it during the trial. Counsel for the defendant nevertheless made clear to this court at oral argument that the parties never agreed, nor was he arguing on appeal, that the findings made by Judge Levin had any preclusive effect or that the trial court was bound to accept the facts as found by Judge Levin. Counsel stated that it was his understanding that the trial court was to treat Judge Levin's factual findings like all other evidence presented to the trier of fact.

[it], as a property owner, had paid Primrose, as the general contractor, the entire balance of their contract as a defense or that [it] paid [the plaintiff]." The court found that the defendant had tried to introduce such evidence in its posttrial brief by representing that Judge Levin had found in his order discharging Primrose's mechanic's lien that the defendant had paid Primrose all sums due and owing to Primrose, and that there was no balance owing under the contract between the defendant and Primrose. The court found that the defendant's interpretation of and reliance upon Judge Levin's findings were misguided and that the only relevant evidence presented to the court at trial was that the defendant never paid Primrose, or the plaintiff, any sum pursuant to the final invoice submitted by Primrose.

In concluding that the defendant was liable to the plaintiff for unjust enrichment, the court found that "(1) [the defendant] received the benefit of the goods and services provided by [the plaintiff] worth $34,900, (2) that [the defendant] unjustly did not pay [the plaintiff] for the benefits, [and] (3) [that] the failure of payment by [the defendant] was to the detriment of [the plaintiff]." After a subsequent hearing on the issue of prejudgment interest, the court issued a decision that the plaintiff was entitled to prejudgment interest of $11,621.70, which, when combined with damages, resulted in a total judgment of $45,521.70, plus $1603 in costs in favor of the plaintiff. This appeal followed.[6]

---

[6] The court's decision in this matter makes no reference to the quantum meruit count against the defendant. Ordinarily, with limited exceptions not relevant here, "[a] judgment that disposes of only a part of a complaint is not a final judgment." (Internal quotation marks omitted.) *Harnage* v. *Commissioner of Correction*, 141 Conn. App. 9, 13, 60 A.3d 308 (2013). We nevertheless are persuaded that the court properly disposed of all counts in the present case because the plaintiff abandoned its quantum meruit claim as evidenced by its posttrial brief, which addressed only unjust enrichment and made no mention of the quantum meruit count. Even if the plaintiff did not intend to abandon its quantum meruit claim, we nonetheless view the claim as having been resolved because the plaintiff would not have been entitled to recover under both theories of restitution. "Quantum meruit is an

Before turning to the defendant's claims, we first set forth some general legal principles that will guide our review. "The equitable remedy of unjust enrichment may be invoked when justice requires that a party be compensated for property or services rendered under a contract, and no [legal] remedy is available by an action on the contract. . . . As an equitable right, unjust enrichment is based on the principle that in a given situation, it is contrary to equity and good conscience for the defendant to retain a benefit [that] has come to him at the expense of the plaintiff. . . . All the facts of each case must be examined to determine whether the circumstances render it just or unjust, equitable or inequitable, conscionable or unconscionable, to apply the doctrine." (Citations omitted; internal quotation marks omitted.) *Garwood & Sons Construction Co.* v. *Centos Associates Ltd. Partnership*, 8 Conn. App. 185, 187, 511 A.2d 377 (1986). "Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment."

equitable remedy to provide restitution for the reasonable value of services despite an unenforceable contract. . . . In contrast, recovery under a theory of unjust enrichment applies in the absence of a quasi-contractual relationship. . . . Because both doctrines are restitutionary, the same equitable considerations apply to cases under either theory." (Citations omitted.) *Walpole Woodworkers, Inc.* v. *Manning*, 307 Conn. 582, 587 n.9, 57 A.3d 730 (2012). Just as breach of contract and unjust enrichment, and breach of contract and quantum meruit, are mutually exclusive theories of recovery; see, e.g., *300 State, LLC* v. *Hanafin*, 140 Conn. App. 327, 330–31, 59 A.3d 287 (2013); *Stein* v. *Horton*, 99 Conn. App. 477, 485, 914 A.2d 606 (2007); unjust enrichment and quantum meruit are alternative theories of restitution. Accordingly, if a trial court determined that restitution was available under one theory, there would be no need for the court to address the alternative theory. Cf. *Union Trust Co.* v. *Jackson*, 42 Conn. App. 413, 416 n.2, 679 A.2d 421 (1996) (where court found in favor of plaintiff on breach of contract claim but did not address alternative unjust enrichment cause of action, judgment nevertheless was final because not necessary for court to address alternative cause of action).

(Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 433, 451–52, 970 A.2d 592 (2009).

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Construction Ken-nection, Inc.* v. *Cipriano*, 136 Conn. App. 546, 552–53, 45 A.3d 663 (2012). "The court's determinations of whether a particular failure to pay was unjust and whether the defendant was benefited are essentially factual findings . . . . Those findings must stand, therefore, unless they are clearly erroneous or involve an abuse of discretion. . . . This limited scope of review is consistent with the general proposition that equitable determinations that depend on the balancing of many factors are committed to the sound discretion of the trial court." (Internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, supra, 291 Conn. 452.

I

The defendant claims that the court improperly awarded the plaintiff damages on the basis of unjust enrichment. According to the defendant, the court should have found on the basis of Judge Levin's December 24, 2009 order discharging Primrose's mechanic's lien that the defendant had paid all sums due and owing under the construction contract with Primrose.

Because the payment to Primrose included payment for the work performed by the plaintiff as a subcontractor of Primrose, the defendant contends that any benefit that the defendant received as a result of work performed by the plaintiff was fully paid for and thus not obtained unjustly. The defendant's claim therefore directly challenges the court's factual finding that the defendant unjustly did not pay the plaintiff for the benefit of the plaintiff's work. We are not persuaded that the court's factual finding was clearly erroneous or involved an abuse of discretion, or that the court erred by failing to make the contrary finding from the inference that the defendant sought it to draw from Judge Levin's order.

We do not take issue with the law the defendant relies on in support of its claim. As the defendant correctly notes, appellate courts in this state have held that where a property owner hires a general contractor to oversee a construction project and thereafter receives the benefit of labor or materials supplied by a subcontractor hired by that general contractor, any enrichment of the property owner from the work of the subcontractor is not unjust absent fraud and provided that the property owner pays the general contractor in full for the subcontractor's services. See *Providence Electric Co.* v. *Sutton Place, Inc.*, supra, 161 Conn. 246–47; *Garwood & Sons Construction Co.* v. *Centos Associates Ltd. Partnership*, supra, 8 Conn. App. 188.

Where we depart from the defendant is in its interpretation of Judge Levin's order. The defendant argues that Judge Levin determined that the defendant had paid for the plaintiff's work. The defendant's argument hinges entirely on Judge Levin's last finding of fact in his December 24, 2009 order, which states: "There is no balance owing or fund which [Primrose] can lien." According to the defendant, that finding can only mean that Judge Levin had determined that the defendant

had paid Primrose for all work done at the property while Primrose was acting as the general contractor, including the work done by the plaintiff. The defendant focuses its attention wholly on the first part of Judge Levin's finding, that there was "no balance owing," while ignoring the remaining language, "which [Primrose] can lien." Considering Judge Levin's finding in the context of the order as a whole and, in particular, in conjunction with the findings that immediately precede it, leads us to conclude that the defendant is misinterpreting the import of Judge Levin's finding, which in essence is no more than a finding of no lienable fund.

Judge Levin was not deciding whether the defendant owed any debt to Primrose, but only whether there was probable cause to sustain the validity of Primrose's mechanic's lien. It is well settled that "[n]o mechanic's lien may exceed the price which the owner has agreed to pay for the building being erected or improved, and the owner is entitled, furthermore, to credit for payments made in good faith to the original contractor before receipt of notice of such a lien or liens. General Statutes §§ 49-33 and 49-36." *Seaman* v. *Climate Control Corp.*, 181 Conn. 592, 596, 436 A.2d 271 (1980). A property owner is also entitled to credit for reasonable expenditures made in completing an abandoned project or in correcting defects to work already performed. See General Statutes § 49-33 (f); *Rene Dry Wall Co.* v. *Strawberry Hill Associates*, 182 Conn. 568, 575, 438 A.2d 774 (1980). Judge Levin found that after Primrose abandoned the contract with the defendant, the defendant incurred reasonable costs, far exceeding the amount of Primrose's lien, to repair unworkmanlike performance and also that the defendant paid far in excess of the contract price to complete the project. It was after making those findings that Judge Levin ultimately found that there was no balance owing or fund *"which Primrose could lien."* (Emphasis added.)

Judge Levin made no specific finding, nor can it be reasonably inferred, that the defendant had paid Primrose any of the $241,424.11 that Primrose sought payment for in the final invoice. Judge Levin simply found that Primrose was not entitled to a mechanic's lien to secure any such alleged debt. More importantly, Judge Levin's order contained no findings pertaining to whether the plaintiff had been paid by the defendant or by Primrose.

Robert Mills, the plaintiff's owner and operator, testified at trial about the process by which the plaintiff was paid. Mills testified that Primrose never paid the plaintiff for work covered by the plaintiff's third and final invoice to Primrose, which all the parties agree was included as part of the final invoice submitted by Primrose to the defendant. As noted by the trial court, the defendant never attempted to introduce any other evidence that it had paid Primrose the balance due under the final invoice. There was sufficient evidence to support the court's factual finding that the defendant unjustly did not pay the plaintiff for the benefits of the plaintiff's work, and we reject the defendant's claim that the factual findings made by Judge Levin renders that finding clearly erroneous.

II

The defendant also claims that the court improperly awarded prejudgment interest pursuant to § 37-3a because there is no basis in law or in fact to award such interest. The plaintiff argues that the record is inadequate for review of the court's award of prejudgment interest because the court failed to state the factual and legal basis for its ruling, and the defendant did not seek an articulation of the court's decision in accordance with Practice Book § 66-5. The plaintiff argues alternatively that the court properly acted within its discretion. On the basis of the record presented, we

find no abuse of discretion in the court's award of prejudgment interest.

The defendant argues that the court lacked discretion to award prejudgment interest under § 37-3a in this action because the plaintiff sought damages on the basis of unjust enrichment. That argument requires us to consider the intended scope of § 37-3a, over which our review is plenary. See *Paulus* v. *LaSala*, 56 Conn. App. 139, 148, 742 A.2d 379 (1999), cert. denied, 252 Conn. 928, 746 A.2d 789 (2000).

"[T]here is no right to recover interest in a civil action unless a statute provides for interest." *Foley* v. *Huntington Co.*, 42 Conn. App. 712, 737, 682 A.2d 1026, cert. denied, 239 Conn. 931, 683 A.2d 397 (1996). Section 37-3a provides in relevant part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable." Our Supreme Court has stated that a "court's determination [as to whether interest should be awarded under § 37-3a] should be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances." (Internal quotation marks omitted.) *Sosin* v. *Sosin*, 300 Conn. 205, 229, 14 A.3d 307 (2011). Detention of money may be wrongful even if a party had a good faith basis for nonpayment. Id.

Our review of the record in this case leads us to conclude that this matter falls squarely within the scope of § 37-3a. We decline the defendant's invitation to create a rule disallowing prejudgment interest pursuant to § 37-3a in an action seeking damages for unjust enrichment. The defendant has provided no compelling legal argument for such a holding, and the proper inquiry in

determining whether interest may be awarded pursuant to § 37-3a is whether the claim at issue involves a wrongful detention of money after it becomes due and payable. See *Foley* v. *Huntington Co.*, supra, 42 Conn. App. 740.

The present matter is a civil action seeking damages for the nonpayment of $34,900 in material and labor that were due and owing to the plaintiff. The court found that on February 23, 2008, the defendant received an invoice for payment from Primrose that included the work performed by the plaintiff. The defendant never paid Primrose or the plaintiff pursuant to that invoice, and the court determined that the defendant therefore wrongfully retained the benefit of the $34,900. The court awarded prejudgment interest on the $34,900 in damages beginning on February 23, 2008, the date the defendant received the invoice demanding payment. On the limited record provided by the defendant, we find no error with the court's legal decision to award interest pursuant to § 37-3a or in its exercise of discretion in so doing.

The judgment is affirmed.

In this opinion the other judges concurred.