******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MYSTIC OIL COMPANY, INC. *v.*
SHAUKAT, LLC, ET AL.
(AC 45832)

Moll, Cradle and Westbrook, Js.

*Syllabus*

The defendants, a gasoline retailer and its guarantor, appealed from the
trial court's award of damages to the plaintiff, a wholesale petroleum dealer,
for breach of contract and breach of guarantee and from the grant of the
plaintiff's motion for attorney's fees and costs. The defendants claimed,
inter alia, that the trial court erred in awarding certain damages. *Held*:

This court declined to review the defendants' unpreserved claim that they
were not liable for point of sale fees charged after the plaintiff had stopped
delivering fuel under the contract because the claim was inadequately briefed
and because the defendants failed to provide the trial court with an eviden-
tiary foundation to support their argument.

Contrary to the defendants' assertions, there was sufficient evidence to
support the trial court's damages determination with respect to the cost of
unpaid fuel deliveries.

The trial court did not err in awarding the plaintiff damages for the unreim-
bursed sales tax that it had prepaid or for the balance of the cost of two
fuel dispensers it had delivered because the court previously had granted
the plaintiff's motion for summary judgment as to liability with respect to
those claims and the hearing in damages did not constitute an opportunity
for the defendants to attempt to undo the liability findings.

The trial court incorrectly granted the plaintiff's motion for attorney's fees
and costs because, in the absence of an evidentiary hearing, the defendants
were deprived of their ability to litigate fully the issue of the reasonableness
of the requested fees and costs.

Argued February 1—officially released September 17, 2024

*Procedural History*

Action to recover damages for, inter alia, breach of
contract, and for other relief, brought to the Superior
Court in the judicial district of New London, where
the plaintiff withdrew its claims against the defendant
Mohammad Sohail; thereafter, the court, *S. Murphy,
J.*, granted in part the plaintiff's motion for summary
judgment as to liability only; subsequently, the matter

was tried to the court, *Jacobs, J.*; judgment for the plaintiff, from which the named defendant et al. appealed to this court; thereafter, the court, *Jacobs, J.*, granted the plaintiff's motion for attorney's fees, and the named defendant et al. filed an amended appeal. *Reversed in part; judgment directed; further proceedings.*

*S. Zaid Hassan*, for the appellants (named defendant et al.).

*Richard S. Gora*, for the appellee (plaintiff).

*Opinion*

MOLL, J. The defendants Shaukat, LLC (Shaukat), and Raja Shaukat Ali appeal from the judgment of the trial court rendered after a hearing in damages following the rendering of summary judgment as to liability only in favor of the plaintiff, Mystic Oil Company, Inc., with respect to its claims for breach of contract and breach of guarantee.[1] Specifically, the defendants challenge on appeal (1) the court's award of certain damages and (2) the court's granting of the plaintiff's motion for attorney's fees and costs without an evidentiary hearing. We affirm in part and reverse in part the judgment of the trial court.

The court found the following relevant facts. The plaintiff is a wholesale petroleum distributor of Exxon-Mobil branded products located in Mystic.[2] On June 9, 2015, the plaintiff entered into a "Complete Contract of Sale (Branded)," as well as a commodity schedule incorporated therein (contract), with Shaukat, a gasoline retailer formerly operating in Owego, New York,

---

[1] The plaintiff's complaint also named Mohammad Sohail as a defendant. The plaintiff subsequently withdrew its claims against Sohail. For this reason, we refer to Shaukat and Ali as the defendants.

[2] To be consistent with the references used by the parties and the trial court, we will refer to the "Mobil" brand throughout this opinion.

pursuant to which the plaintiff would, for a ten year term beginning on June 9, 2015, and ending on June 8, 2025, be the exclusive supplier of Shaukat's motor fuel product requirements. The contract was guaranteed by Shaukat's principal, Ali. Under the terms of the contract, as stated in paragraph 5 of the commodity schedule, "[t]he [plaintiff's] price per gallon to be paid by [Shaukat] shall be [Mobil's] posted per gallon terminal price ('Rack') at the applicable terminal in effect at the time loading commences, plus all applicable taxes and all fees . . . ."

Shaukat failed to pay for deliveries from the plaintiff on October 10, 17 and 24, 2017. The total amount of the unpaid invoices was $46,496.98, comprising $43,648.21 for unpaid fuel deliveries and $2848.77 in unpaid point of sale (POS) fees, namely, "Cybera POS" fees, "Gilbarco Plus" fees, and "Mobil POS" fees.[3]

The plaintiff prepaid New York sales tax on its fuel deliveries to Shaukat, which was obligated to reimburse the plaintiff for such prepayments pursuant to paragraph 10 of the contract, which provides in relevant part: "Taxes. It is agreed that any duty, tax, fee or other charge [the plaintiff] may be required to collect or pay under any law . . . with respect to the . . . sale, delivery or use of the product(s) covered by this [c]ontract shall be added to the prices to be paid by [Shaukat] for product(s) purchased hereunder." Shaukat failed to reimburse the plaintiff for prepaid sales tax in the amount of $12,829.52.

The plaintiff delivered two fuel dispensers to Shaukat, the total cost of which was $14,000. Of that amount,

---

[3] The plaintiff's principal, Peter Zelken, testified at trial that (1) Cybera POS fees relate to an Internet communication device that allows the gasoline station to have highspeed credit card processing, (2) Gilbarco Plus fees relate to "the helpdesk" for the station's POS system, as required by Mobil, and (3) Mobil POS fees are Mobil's monthly merchant card processing fees.

Shaukat paid $6613.58 in accordance with an amortization schedule, leaving a balance of $7386.42.

In February, 2018, the plaintiff commenced this action against the defendants. The complaint consisted of five counts: (1) breach of contract as to Shaukat (count one); (2) breach of guarantee as to Ali (count two); (3) unjust enrichment as to both defendants (count three); (4) breach of the implied covenant of good faith and fair dealing as to both defendants (count four); and (5) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., as to both defendants (count five). On July 30, 2019, the plaintiff filed a motion for summary judgment directed to all counts, to which the defendants objected.

On June 16, 2020, the court, *S. Murphy, J.*, granted in part and denied in part the plaintiff's motion for summary judgment. Specifically, the court granted the motion with respect to counts one and two as to liability only. The court concluded: "Regarding the plaintiff's claims at count one and two, there exists no genuine issue [of] material fact that, on June 9, 2015, the plaintiff . . . entered into an agreement with [Shaukat] for the purchase and delivery of fuel with a ten year term and payment provisions. Further, there is no issue of material fact that the contract included, among other things, a certain commodity schedule and an exclusivity provision concerning the supply of the motor fuel at issue. Further, there is no issue of material fact that [Ali] signed a personal guarantee as to [Shaukat's] performance of the terms and condition[s] of the contract. There is no issue of material fact that the plaintiff performed its obligations under the agreement and that [Shaukat] has violated the exclusivity provision and has failed to make payment to the plaintiff in accordance with the terms and conditions of the agreement. Additionally, there is no issue of material fact that [Ali] has failed to perform in accordance with the executed

guarantee and that, as a result of the breach of contract and breach of guarantee, the plaintiff has sustained damages. The court does, however, find issues of material fact concerning the actual amount of recoverable damages incurred as a result of the breach of contract and guarantee under counts one and two. As such, summary judgment is granted in favor of the plaintiff as a matter of law only as to breach of contract and breach of guarantee at counts one and two."[4]

A bench trial, which was essentially a hearing in damages on counts one and two, took place on August 4 and 5, 2022.[5] At trial, in support of its contractual damages claims, the plaintiff sought to prove, inter alia, that Shaukat (and Ali as guarantor) owed the plaintiff (1) $46,496.98 in unpaid fuel deliveries and POS fees, (2) pursuant to paragraph 10 of the contract, $12,829.52 in unreimbursed sales tax on fuel deliveries, which the plaintiff had prepaid to the state of New York, (3) a $7386.42 balance for the cost of two fuel dispensers, and (4) $21,191.60 for brand incentive/brand growth programs. The president and chief executive officer of the plaintiff, Peter Zelken, testified for the plaintiff; Shaukat's principal, Ali, testified for Shaukat. The court, *Jacobs, J.*, concluded that the plaintiff had met its burden to prove its first three claims for damages, but not

[4] The court also stated that, in light of its conclusion as to count one, it would not reach the plaintiff's motion for summary judgment as to the plaintiff's unjust enrichment claim in count three. In addition, the court found that the plaintiff had not sustained its burden as to counts four (breach of the implied covenant of good faith and fair dealing) and five (CUTPA), whereupon it denied the plaintiff's motion for summary judgment as to those counts.

[5] In its memorandum of decision, the court stated that counts three through five were abandoned at trial. We note that count three is deemed abandoned because the plaintiff did not address it in its posttrial brief; see *Nation Electrical Contracting, LLC* v. *St. Dimitrie Romanian Orthodox Church*, 144 Conn. App. 808, 814 n.6, 74 A.3d 474 (2013); and counts four and five were expressly abandoned at trial.

the fourth.[6] Thus, the court rendered judgment for the plaintiff in the amount of $68,712.92.[7]

On October 3, 2022, the plaintiff filed a motion for attorney's fees and costs, seeking an award of trial related, contractual attorney's fees and costs in the amount of $21,550. On October 17, 2022, the court granted the plaintiff's motion and awarded the amount of $21,550. This amended appeal followed.[8] Additional facts and procedural history will be provided as necessary.

I

The defendants challenge on appeal four categories of damages awarded by the court, namely, (1) POS fees charged after the plaintiff had stopped delivering motor fuel products to Shaukat, (2) unpaid fuel deliveries, (3) unreimbursed sales tax that the plaintiff had prepaid to the state of New York, and (4) the balance of the cost of two fuel dispensers.

Before reaching the defendants' claims with respect to each of these categories, we briefly address the applicable standard of review. "Our standard of review applicable to challenges to damages awards is well settled. . . . [T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . [If], however, a damages award is challenged on the basis of a question of

---

[6] The court expressly found Zelken's testimony to be credible on the plaintiff's damages claims for (1) unpaid fuel deliveries and associated fees, (2) prepaid sales taxes, and (3) the balance of the cost of two fuel dispensers.

[7] The court appears to have made a mathematical error in calculating the sum of the proven damages amounts. The correct amount of damages should be $66,712.92. Although not raised by the parties, the error is clearly technical and not substantive, and, thus, we will direct its correction on remand. See *Greco* v. *Morcaldi*, 145 Conn. 685, 690–91, 146 A.2d 589 (1958); *Amwax Corp.* v. *Chadwick*, 28 Conn. App. 739, 741 n.1, 612 A.2d 127 (1992).

[8] The plaintiff did not file a cross appeal.

law, our review [of that question] is plenary." (Internal quotation marks omitted.) *RCN Capital, LLC* v. *Chicago Title Ins. Co.*, 196 Conn. App. 518, 523, 230 A.3d 740 (2020).

A

The defendants first claim that the court erred in awarding the plaintiff $2848.77 for POS fees charged after the plaintiff had stopped delivering motor fuel products to Shaukat.[9] This claim fails.

By way of background, on the basis of the figures reflected on a business record generated by the plaintiff's accounting system, which was admitted in full as plaintiff's exhibit 5, Zelken testified to the amount of POS fees that were due and owing from the defendants, namely, $2848.77. Zelken testified that the plaintiff had incurred those fees as part of its Mobil franchise—testimony that the trial court expressly credited.

On appeal, the defendants do not contend that there was insufficient evidence to support the court's damages determination as to POS fees. Rather, they argue, without any citation to the record or any legal authority, that they are not liable for any POS fees charged after the plaintiff had stopped delivering motor fuel products to Shaukat. The defendants' argument in this regard is little more than the ipse dixit of counsel, and, therefore, the argument initially fails because of inadequate briefing. The argument suffers from an equally fatal flaw, illuminated by our review of the record, which is that, by failing to provide the trial court with an evidentiary foundation to support their present argument, the defendants did not preserve their claim on appeal. Thus, we decline to review it further.

B

The defendants next claim that the court erred in awarding the plaintiff $43,648.21 for unpaid invoices

[9] See footnote 3 of this opinion.

for fuel deliveries on October 10, 17 and 24, 2017. Specifically, the defendants argue that the evidence on which the court relied to make this damages determination was merely subjective and speculative and, therefore, insufficient to support the award. This argument is unavailing.

We set forth the well settled legal principles governing a claim of evidentiary insufficiency in this context. "Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . . [T]he court must have evidence by which it can calculate the damages, which is not merely subjective or speculative . . . but which allows for some objective ascertainment of the amount. . . . This certainly does not mean that mathematical exactitude is a precondition to an award of damages, but we do require that the evidence, with such certainty as the nature of the particular case may permit, lay a foundation [that] will enable the trier to make a fair and reasonable estimate." (Emphasis omitted; internal quotation marks omitted.) *Roach* v. *Transwaste, Inc.*, 347 Conn. 405, 412, 297 A.3d 1004 (2023).

Mindful of these principles, we turn to whether the evidence on which the court relied was sufficient to satisfy the reasonable certainty standard of proof. In the present action, Zelken testified that Shaukat had failed to pay the invoices for fuel deliveries on October 10, 17 and 24, 2017. He based this testimony on plaintiff's exhibit 5, described previously in this opinion, which reflected an amount due and owing of $43,648.21. The court expressly credited this testimony and cited the admitted exhibit in its memorandum of decision in calculating its damages award for the unpaid fuel deliveries, which is consistent with the figures set forth in plaintiff's exhibit 5.

The defendants complain on appeal that this evidence was insufficient because the business record admitted at the hearing in damages was the same document that the plaintiff had submitted in support of its motion for summary judgment, which the court necessarily found insufficient to entitle the plaintiff to an award of damages as a matter of law. In making this argument, the defendants cite no authority, and we are not aware of any, for the proposition that a business record submitted in the summary judgment context—in which the court does not weigh evidence—may not be sufficient to prove damages to the satisfaction of the fact finder at trial. See *Augustine* v. *CNAPS, LLC*, 199 Conn. App. 725, 733, 237 A.3d 60 (2020) ("[T]he trial court does not sit as the trier of fact when ruling on a motion for summary judgment. . . . [Its] function is not to decide issues of material fact, but rather to determine whether any such issues exist." (Internal quotation marks omitted.)).

In sum, because there was sufficient evidence to support the court's damages determination with respect to the unpaid fuel deliveries, the court's award of $43,648.21 in connection therewith was not clearly erroneous.

C

The defendants next claim that the court erred in awarding the plaintiff $12,829.52 for unreimbursed sales tax that it prepaid to the state of New York. Although not a model of clarity, the defendants' claim distills into three parts, namely, that they should not be held liable for such amount because (1) Shaukat had no liability to remit sales tax directly to the state of New York, (2) it was not Shaukat's fault that, at the time the plaintiff stopped delivering to Shaukat, there was a balance of unreimbursed prepaid sales tax, and (3) the contract did not contemplate or permit the amortization of the

amount due (i.e., the amount that the plaintiff voluntarily amortized, rather than requiring Shaukat to pay the amount due in one lump sum). These contentions are without merit and warrant little discussion.

Paragraph 10 of the contract provides in relevant part: "Taxes. It is agreed that any duty, tax, fee or other charge [the plaintiff] may be required to collect or pay under any law . . . with respect to the . . . sale, delivery or use of the product(s) covered by this [c]ontract shall be added to the prices to be paid by [Shaukat] for product(s) purchased hereunder." Relying on a business record generated by the plaintiff showing the amortization of the unreimbursed New York prepaid sales tax, which was admitted in full, Zelken testified that, pursuant to the obligation under paragraph 10 of the contract, Shaukat owed the plaintiff the amount of $12,829.52 in unreimbursed New York prepaid sales tax. The trial court expressly credited this testimony.

On appeal, the defendants essentially challenge their underlying liability for this component of the damages award. In doing so, the defendants ignore that the court rendered summary judgment in favor of the plaintiff as to liability on counts one and two—a ruling that the defendants do not challenge on appeal. That is, count one of the complaint included the allegation that Shaukat's failure to pay the plaintiff the amount of $12,829.52 for sales tax prepaid to the state of New York constituted a breach of contract. Count two, which incorporated the allegations of count one, alleged that Ali's failure to pay such amount constituted a breach of guarantee. In its motion for summary judgment, supported by appropriate documents, the plaintiff specifically argued that it was entitled to judgment as a matter of law on counts one and two, including with respect to the unreimbursed prepaid sales tax in the amount of $12,829.52. The court granted the plaintiff's motion with respect to counts one and two as to liability only,

necessarily concluding that there was no genuine issue of material fact that such a breach had occurred. Simply stated, a hearing in damages is not an opportunity to attempt to undo a liability finding made in the context of summary judgment. See, e.g., *Ninth RMA Partners, L.P.* v. *Krass*, 57 Conn. App. 1, 3–5, 746 A.2d 826 (defendants improperly raised issue of liability at hearing in damages following summary judgment as to liability only rendered following defendants' concession as to liability), cert. denied, 253 Conn. 918, 755 A.2d 215 (2000).

In sum, we find no error in the court's award to the plaintiff of $12,829.52 for unreimbursed sales tax that it prepaid to the state of New York.

### D

The defendants also argue that the court erred in awarding the plaintiff $7386.42 for the balance of the cost of two fuel dispensers on the basis of an implied contract theory[10] when there was a written contract between the parties, which, according to the defendants, does not require Shaukat to pay for the fuel dispensers. For the same reason that we rejected the defendants' claim with respect to the prepaid sales tax discussed in part I C of this opinion, we reject this claim.

The defendants challenge on appeal their underlying liability for this component of the damages award and again ignore that the court rendered summary judgment in favor of the plaintiff as to liability on counts one and two. Count one of the complaint included the allegation that Shaukat's failure to pay the plaintiff the $7386 balance of the cost of two fuel dispensers constituted a

---

[10] We need not resolve why the court, *Jacobs, J.*, relied on an implied contract theory in making its damages determination with respect to the fuel dispensers when the court, *S. Murphy, J.*, previously had found liability relating thereto pursuant to the plaintiff's breach of contract and breach of guarantee claims in counts one and two.

breach of contract. Count two, which incorporated the allegations of count one, alleged that Ali's failure to pay such amount constituted a breach of guarantee. In its motion for summary judgment, supported by appropriate documents, the plaintiff specifically argued that it was entitled to judgment as a matter of law on counts one and two, including with respect to the balance of $7386 relating to the purchase and installation of two fuel dispensers. Because the court granted the plaintiff's motion with respect to counts one and two as to liability only, the court necessarily concluded that there was no genuine issue of material fact that such a breach had occurred. The hearing in damages did not provide the defendants with an opportunity to attempt to undo the liability finding made in the context of summary judgment. See, e.g., id., 4–5.

Accordingly, we find no error in the court's award of $7386.42 for the balance of the cost of two fuel dispensers.

## II

Finally, the defendants claim that, because they timely objected to the plaintiff's motion for attorney's fees and costs and requested an evidentiary hearing with respect thereto, the court incorrectly granted the motion without conducting a hearing. We agree.

The record reveals the following additional facts and procedural history that are relevant to our resolution of this claim. Paragraph 33 of the contract provides that "[the plaintiff] shall be entitled to recover from [Shaukat] all reasonable [attorney's] fees and other legal costs incurred to secure or protect its rights under this [c]ontract or enforce the terms thereof, whether at law or in equity." During trial, Zelken testified that the plaintiff had thus far incurred approximately $20,000 in attorney's fees to prosecute the action. In its posttrial brief, the plaintiff maintained its claim that the judgment

should include an award of attorney's fees under paragraph 33 of the contract and requested a briefing schedule.

When the court issued its September 2, 2022 memorandum of decision, it stated that "[t]he case shall be assigned for a postjudgment hearing on the plaintiff's claim for attorney's fees." On October 3, 2022, the plaintiff filed its motion for attorney's fees and costs, seeking an award of trial related, contractual attorney's fees and costs in the amount of $21,550. See Practice Book § 11-21. The plaintiff also filed an accompanying affidavit of Attorney Richard S. Gora, which provided a breakdown of the time spent, tasks, hourly rate, and fees charged to support the amount requested, as well as redacted billing invoices from Gora, LLC, to the plaintiff. The defendants subsequently filed an objection (1) contending that the requested fees improperly included time spent on claims that were not pursued and/or were withdrawn and (2) indicating "ORAL ARGUMENT REQUESTED. TESTIMONY REQUIRED." On October 17, 2022, without having conducted a hearing, the court granted the plaintiff's motion for attorney's fees and costs, finding the request to be reasonable and necessary and awarding the amount of $21,550.

On the question of whether the defendants were entitled, under the circumstances of this case, to an evidentiary hearing on the plaintiff's motion for attorney's fees and costs, we find our Supreme Court's decision in *Commission on Human Rights & Opportunities* v. *Sullivan*, 285 Conn. 208, 939 A.2d 541 (2008), to be instructive. In *Sullivan*, a housing discrimination action, the trial court found in favor of the plaintiffs, the Commission on Human Rights and Opportunities and a prospective tenant. Id., 210–11. On appeal, the defendants claimed, inter alia, that the trial court

improperly prevented them from fully litigating the reasonableness of the plaintiff tenant's request for statutory attorney's fees by precluding them from eliciting the testimony of the billing attorney who had submitted an affidavit and her billing records in support of the request. Id., 235–36. The trial court had concluded that the affidavit and billing records were sufficiently detailed to allow a reasonableness determination, that the records constituted prima facie evidence of the reasonableness of the requested fees, and that "the defendants had been free to challenge the reasonableness of the requested fees through the submission of their own affidavits and through the presentation of expert testimony." Id., 237.

The question presented to our Supreme Court in *Sullivan* was "whether a party opposing a request for attorney's fees has a right, during a hearing on the reasonableness of the requested fees, to question under oath a billing attorney who has presented an affidavit in support of those fees." Id. In its analysis, the court iterated its prior clarification of "the basis on which a trial court may make a determination of the reasonableness of requested attorney's fees, [namely] that 'more than [a] trial court's mere general knowledge is required for an award of attorney's fees.' *Smith* v. *Snyder*, 267 Conn. 456, 472, 839 A.2d 589 (2004). The burden of showing reasonableness rests on the party requesting the fees, and 'there is an undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing.' . . . Id., 471. Specifically, [the court] concluded that 'there must be a clearly stated and described factual predicate for the fees sought, apart from the trial court's general knowledge of what constitutes a reasonable fee.' Id., 477. That factual predicate must include 'a statement of the fees requested and a description of services rendered.' Id., 479.

"[The court] explained that imposing such a preliminary burden on the proponent of the fees 'affords the opposing party an opportunity to challenge the amount requested at the appropriate time.' Id. It was unnecessary in *Smith* for [the court] to consider what procedural rights were encompassed by the opposing party's right to challenge the amount requested, because the defendants in *Smith* had not opposed the plaintiffs' request for attorney's fees at trial. In the opinion, however, [the court] noted in dicta that when a party against whom attorney's fees are sought 'affirmatively [objects] to the submission of evidence in support of the request for attorney's fees'; id., 480 n.14; the opposing party is entitled 'to litigate fully the reasonableness of the fees requested.' Id., 479 n.14. [The court] illustrated this point by citing [its] decision in *Barco Auto Leasing Corp.* v. *House*, 202 Conn. 106, 121, 520 A.2d 162 (1987), in which the defendants' attorneys had submitted affidavits in support of the defendants' request for attorney's fees. The trial court overruled the plaintiff's objection that expert testimony was necessary to determine the value of reasonable attorney's fees. [Id.] The [trial] court did not admit the affidavits as evidence, but did allow them to be included in the file, and instructed the parties to address any further issues regarding attorney's fees in their briefs. Id. [Our Supreme Court] reversed the judgment of the trial court, concluding that the court had denied the plaintiff 'the undisputed right to litigate fully the reasonableness of the attorney's fees . . . .' Id." *Commission on Human Rights & Opportunities* v. *Sullivan*, supra, 285 Conn. 237–39.

The court in *Sullivan* proceeded to conclude expressly "what was implicit, both in *Smith* and *Barco Auto Leasing Corp.*, namely, that the right to litigate fully the reasonableness of attorney's fees entitles the opposing party to question under oath a billing attorney who has submitted an affidavit in support of the

requested fees, in order to challenge the reasonableness of those fees. This rule will ensure that the party opposing the requested fees has available to it the most fair and efficient means of challenging those fees, that is, questioning under oath the very person on whom the court relies in assessing the fees, the billing attorney. It is not a sufficient substitute to limit the opposing party to filing opposing affidavits or calling expert witnesses. Allowing the challenging party this right will also aid the court in making its determination regarding the reasonableness of those fees. It would be inconsistent with the placement of the burden on the requesting party, and with [the court's] statement in *Smith* that an opposing party should have the right to litigate fully the issue of reasonableness, to allow the requesting party to present an affidavit by the billing attorney in support of the reasonableness of the requested fees, without allowing the opposing party to test that evidence by questioning the affiant under oath." Id., 239.

Applying *Sullivan* to the present action, we conclude that, because the defendants had timely objected to the plaintiff's motion for attorney's fees and costs and had requested an evidentiary hearing, the trial court erred in adjudicating the plaintiff's motion without holding such a hearing. In the absence of such a hearing, the defendants were deprived of the ability to litigate fully the issue of reasonableness of the requested fees and costs.

The judgment is reversed only as to (1) the calculation of the proven damages amounts; see footnote 7 of this opinion; and (2) the award of attorney's fees and costs, and the case is remanded (1) with direction to render judgment for the plaintiff in the amount of $66,712.92 and (2) for an evidentiary hearing limited to the issue of the amount of attorney's fees and costs; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.